Case No. 22-1287, et al., J.G. Kern Enterprises, Inc. Petitioner v. National Labor Relations Board Mr. Baskin for the petitioner, Mr. Sautter for the respondent We're just going to hold for a moment for the Judge Edward Files who didn't seem to have made it to the bench. Self-help is often the way to get things done. Thank you. Good morning, Mr. Baskin. You may proceed when you're ready. Good morning, and on behalf of J.G. Kern Enterprises v. National Labor Relations Board, I've asked for two minutes for rebuttal. The board in this case has refused to honor the wishes of the overwhelming majority of Kern's employees who signed a petition four years ago, the overwhelming majority saying they don't want to be represented by the union anymore. They delivered that petition to the employer 54 days after the certification year expired. There had been an election. They were certified. And there's something called the certification year. I'm sure you've all read about it. And it makes an irrebuttable presumption. But that year had expired for 54 days. The ULPs occurred within the year. Sorry? The ULPs occurred within the year. Correct. And the board relied on those ULPs. They have done a lot over the years. That's the rule. They can extend the certification year if the ULP refusal to bargain occurs within the certification year. Yes. And according to the Tenneco decision, the master slack factors are supposed to be used to determine whether they are serious enough. Never. Oh, I'm sorry. The board has never overruled the precedent that I just mentioned. That is still good law. There's nothing in board law that overrules the certification year rule. Nothing. Right. Well, it depends on which rule you're talking about. I'm talking about the rule that was applied against you. If you commit violations during the certification year, there is the power to extend the certification year. But if you take a look at the Champion Home Building case, as well as the Garden Ridge case cited and relied on in Tenneco, they indicate that you don't automatically extend it. That's really where we are. Perhaps the board had prosecuted your client based on the other rule. They had two theories that they could have applied. There's nothing that prohibited them from using the theory that they used, which was that there was a ULP that occurred during the certification year. They can extend the certification year. Old news. That law has never been overruled by the board ever. It is still good law. It depends on which precedent you're referring to. So I think you're not disputing that an extension of a certification year is an appropriate remedy in a case, for example, where there's a period of time when an employer refuses to bargain. I mean, just putting aside the facts of this case, and I know you contest whether substantial evidence supports that here. But if you had substantial evidence showing, let's say, employer refuses to bargain for six months and the board finds that the remedy for that is an extension of the certification year bar, you don't dispute that that's an appropriate remedy in that case. Correct. It can be that remedy in the case that you've described. And here I take it that your challenge really is to the retrospective extension of the certification year bar to invalidate the Section 7, the exercise of the disaffected members' Section 7 rights to decertify. And if you're right about that, then there's no union. There's no extension of the certification year bar. Just the case is over, right? Correct. Right. And so then the question is, how do you think about, for example, we have the very test precedent that says Master Slack can coexist with extension of certification year bar. And I take your distinction of that to be, well, there it was a prior order in place already extending certification year bar. And that's not the case here. Correct. So that's the distinction. I accept that there are cases that the board cites a number of them that do have this particular scenario. And the board is able to use the precedent that you don't want it to use. The dissent understands that the dissent's argument is to suggest that they seem to be inconsistent, shouldn't have both on their books. But the board has certainly applied the rule in these circumstances. You simply are trying to get us to, without the board having done it itself, overrule the situation. The board has had cases in the past consistently when it has been brought to the board. As this case was brought to the board, the board has consistently applied the rule against you. You can have an extension of the certification year looked at after the certification year if the ULP occurred during the certification year. That's not news. That's prospective. Only prospectively. So what about I mean, I'm probably missing something because you're way more expert in this than I am. But in Frank's brothers, the old Supreme Court case, the court affirmed the board doing exactly this. The union had lost a majority. And yet the board said there had been a refusal to bargain. And the only way to remedy that was to impose an affirmative bargaining order. But the only reason they reached that issue was because they invalidated the loss. The unions lost majority and said, you know, so they did both things and they did it. And I think in that case, in the kind of backward looking way that as that's different from what we affirmed in Veritas. I don't think that the scenario is the same. And I think that since addressing Judge Edwards point since master slack in this in the 21st century, in this century, there has been no case in which the board has relied on the whisper saw precedent, which is what we're talking about here, a vacated decision. There is just no case like it where there as there are cases in the certification year that have applied the master slack standards. That's the issue. It's not that they couldn't do it, but they have to do it with applying those standards. I know it's in the last century of the 1998 board decision in New Madrid nursing. That case seems to me like whisper soft. And I take your point that the court, you know, in whisper soft for separate reasons said there's not a violation here. But the board's reasoning stands there. But doesn't New Madrid nursing apply a similar analysis to retrospectively both to apply this to extend the certification year bar and also to invalidate an intervening loss of support for the union? Yes, of course, not much of a board analysis. It just adopted a decision. A.L.J. has one mention of collaboration, whether it's whether they use the term whisper soft or not. You know, I think the the I guess the question is, isn't the remedial power to do this, whether you tag it as whisper soft or something else long standing? How can you have I mean, the board has created two lines of precedent at best. We would submit they've abandoned the whisper soft. So I see that's the frailty in your arm. When did they abandon it? I mean, I understand exactly what you're trying to do. This is a good way to overturn board precedent when they haven't done it themselves. They have not abandoned this line of precedent. And they've had opportunities in a number of cases which they could have was never raised. That was raised on the list of and the board prosecuted. They've never not when it's come up. Never. They they abandoned it when they issued the champions case, when they issued the Garden Ridge case, when this not not by its term. So so why isn't this the way to think about it? That. And I think that that board member rings footnote at the end of his opinion is telling he says, I appreciate that there are unfair labor practices that involve interference with bargaining refusal to bargain in good faith. That might not taint the employees election choice to repudiate the union because they may not even be aware of it. And he says, but there are other ways to deal with that. But I think the board majority is saying where the unfair labor practice is about bargaining and impedes or frustrates the certification year. In that subset of cases, the certification year bar, including the retrospective, like in Hotel Madrid and Whispersoft, is appropriate. Now, there are reasons not to go straight there. There are reasons potentially to do a master slack analysis. And partly it's what you started with. I think correctly that the dissenting employees, section seven, right, employees need to have a chance to choose to repudiate the union if they want. But if you think conceptually about can master slack. You know, cohabitate or be, you know, persist consistent with the Hotel Madrid and the Whispersoft analysis. Why isn't why doesn't it make sense that they're overlapping but distinct analyses that may be appropriate in different situations? Frankly, for the reasons that the dissent said that point squarely, it makes it overstates it, though, and saying that there's always a toggle choice. Because I don't think every master slack violation would support extension of of the certification year bar. But I'd also ask about master slack. You seem to be relying on that as kind of the exclusive way to look at this case. And I'm just curious as to that. Because of the court itself has said so. Or to sell said that's the only way you can afford because they were confronted with these almost identical facts. That's what precedent is. It's cases that are dealing with the facts. And they cited and relied exclusively on message like, no, they did not say, look, the strength of your argument. I'm sorry. The strength of your argument is there are some cases in which the board would have applied whisper. And they chose to go master. That's that's true. That's absolutely true. Perplexing. One wonders why. But there are also cases where the opposite is true, where they could have applied master. And they applied was whisper. And they have never abandoned the whisper. Never. And you're trying to say, as you honestly said, well, if you look, it depends on which century you're looking in. That's not the way to determine the applicability of precedent. Master slack is an appropriate lesson precedent. And what you don't like is that the board has a prosecutorial choice. There's nothing in the law that says the board has to prosecute by master slide or whisper. So I understand why you'd rather go the way you are pushing, because it's a tougher burden on the board to make the case. No question. Certification year precedent is it's a presumption. That's right. They've never abandoned that. It's not our role to remove precedent when the agency hasn't considered it and made that decision. It's very clear they haven't changed. The majority in this case says we are not abandoning that precedent. Majority is clear. That's what the board said in this case. We are not abandoning precedent. And it's I first say it's not just in this century. It's not just us. It's the dissenting opinion. A member of the opinion is only that a dissenting opinion. It is not precedent. And the board majority confronted with your argument rejected it. And they had their argument because the dissent raised it. And the majority said, no, there is precedent on the books. We've always had the choice to go as we choose. And this was an appropriate application in their view. And that's the way the case was prosecuted. But reviewing the course of precedent with regard to whisper soft, it has to be viewed as discredited. Not only was it vacated by the 9th Circuit, it was denied enforcement. It was ignored by the board. This notion that it was always there. The 9th Circuit did not repudiate precedent. There were factual issues there. And what about New Madrid Nursing Center, which I know there are subtleties in these cases, but I read it to present the same situation. And to the extent you're relying on the 9th Circuits later. But the decisions that repeatedly issued after the Madrid case, after this result, they don't even they ignore it. But the judge in this case ignored it. The general counsel ignored it. No one thought it was a precedent, except it's pulled out of nowhere. They chose not to prosecute. That's within their authority. The general counsel can use any available theory to go after a ULP. That's what you don't like. I understand what you're arguing, but we can't overturn an established precedent. There's nothing in the law that says the board can't pick which theory, prosecutorial theory, it wants to pursue to go after an ULP. And based on what standards, your own decisions have said the board cannot create two lines of precedent. And that's what's happened here. There's no rationality to when they would pick one versus the other. There's no notice to the company. There's no notice to the employees who filed their petition. No, I was just going to say on the notice point, and that would be the basis, I think, for your distinction of veritas. That, you know, it's one thing if there's an extension of the bargaining year in place and everybody knows, it's another thing if that hasn't been decided yet. But here there were pending complaints by the general counsel specifically asking for extension of the certification year bar and explaining the basis of that. So at the time that the one year since election expired, surely the employers on notice that that's a potential remedy. Well, a pending unfair labor practice charge complaint is significantly removed from the actual order. But it does sometimes not prevail on those. It does give notice of the possibility that that's a remedy. It's not been held to be. Take your point. But we don't think it alters the situation. Certainly, please sort of. It would be helpful to me in thinking about the relationship between these two lines of precedent. In your view, the conflict between them, the reason they can't coexist is what? Well, because if you use the whisper soft precedent, then it is an irrebuttable presumption. And that if you use master slack, it's a rebuttable presumption that they are in diametric opposition. They're not for the different purposes. But what about if if the irresistible presumption is based on the reasoning of the court, the Supreme Court's cases, Franks and Brooks and the older cases that explain. In effect, it's it's like a categorical taint to say if the union has been unable to function in the way that the employees might have reason to expect it to function in their behalf. During that year certification year, then even if the employees aren't aware of it, so it's not sort of bearing in that way, it's it's presumptively bearing on their satisfaction with the union. And so I'd love to hear because you I know you have a different way of looking at that. But to me, they seem not inconsistent. And I do appreciate that master slack requires a kind of showing that the whisper soft analysis doesn't. But I think only certain kinds of unfair labor practices would support the whisper soft remedy. So it also requires a different showing that is maybe inaccessible in certain. Well, the way the board is described whisper soft, it doesn't matter what kind of unfair labor practices they are. Whereas if you show a taint, if you can show a taint. So that is kind of a subset of unfair labor practices. And conversely, I'm sorry I interrupted you, but conversely under whisper soft, the kind of unfair labor practice that would show sort of a de facto suspension of a portion or all of the bargaining here. Not every unfair labor practice is going to is going to support that either. But if that were true, then all of these other cases, they're dealing with the exact same thing about a delay in bargaining. That's really the only reference was made that, well, the unions can't doing its job or something. It was just because of a delay in bargaining which happened with some frequency. And the board has looked at those kind of cases and always in decades century has has found that the master slack principles apply to decide. Did it cause the employee disaffection? Did it cause a taint? The whisper soft, I don't want to call it a doctrine. It's a statement that it just said, no matter what, it doesn't give it any concern to the impact on the union or the employees that it doesn't care whether it creates a taint. It says, oh, you delay bargaining. We're just going to automatically do it. That, I think, has been abandoned, if not outright overruled. It hasn't been. I'm glad you smile. It has not been expressly overruled, but there is there is there is such a thing as abandonment by the board when they keep issuing decisions that say the opposite. Yeah, that's my question. Is it the opposite in the sense that if the board can come to agreement by saying in the cases where there's a delay of bargaining and we can also show that it was in the consciousness of the employees that it tainted their attitude of the union, then why not do that? Right. If it brings the board together, I mean, like if they had done a master slack analysis here, maybe Ring wouldn't have dissented. So you can see reasons why they would say, well, fine, we'll use that. But does it require them to abandon this other line of precedent, which has the policy of protecting that certification and the productive interaction of the employer and the employees? No, they don't. They don't have the right when they have repeatedly, not just master slack repeatedly in five cases that the board acknowledge the majority knowledge five times in the certification year. The board has looked at issues of delay in bargaining and has applied the master slack standards to determine does it cause did it cause the disaffection? And you're talking about champion Garden Ridge? Yes. And Garden Ridge was cited specifically in the Tenneco case as as the standard or within the certification here. No mention of Whispersoft there. And it was a very thorough opinion that explained the state of the law on. No one raised Whispersoft. It wasn't prosecuted on those terms. Well, what kind of precedent is that? The board can prosecute on different theories, depending upon the facts scenarios. And sometimes there's more than one theory. I certainly remember that much from my days in labor law when there were alleged U.L.P. that arose. There may have been two or different ways that the NL NLRP could have prosecuted. You know that as well as I do. Well, this is an area. It's strange. I understand what you're saying, but the rationale is different. Master all guarantees that the union, in fact, receives one full year of bargaining after certification. That's the theory of that prosecutorial approach, whereas masses like concerns, whether there's a causal relationship between the employer's unlawful conduct and the union's loss of support. A different theory. The certification year is longstanding. That notion that a union should have one year and should not have it interrupted is longstanding. The board has never walked away from it. And there are times when the prosecutor sees it and uses it. But for the reasons stated, you are right. There are times when the prosecutor could have used it and went with the master select. So what? That's not an abandonment of precedent. It's a certification year. Yes. Certification from the date of certification, not from the first bargaining session. And that's what's being applied by Whispersoft. They are trying to convert, in fact, in the brief of the general counsel. They described Brooks as making it a bargaining year. It's not called a bargaining year. It's called the certification. They complied with that. They went 54 days beyond it. I disagree with the notion of that. Your client has not committed any unfair labor practices. But the board has explained that rationale and its analysis in that regard. So are you still holding on to that? Well, we deny that any unfair labor practices occur. But with the core issue here is that even if they occur, they were not of the type that results has resulted in a bargaining order under master slack. It doesn't prevent employees. The employees didn't even know about whether the cost issue and they were the 10 months that went by. Happens to be exactly what the amount of time in Tenneco was and was found not to be a reason for finding taint. So the issue is they don't cause the disaffection. That means the petition was valid and the employer was entitled to rely on it to withdraw recognition as the overwhelming majority of employees asked them to do. And that's what I'd like to get to next is just kind of if if we were not to enforce the board's decision, then does that include the matter? Or are you suggesting that there's some type of remand? We don't think a remand is necessary or desirable. It's been four years. The board has an opportunity to get it right. We maintain or disagree, but we maintain that we got it wrong. But these matters occurred in 2018, 2019. So what does this look like in 2023? Well, the withdrawal of recognition stands and everybody goes on about their business proceedings. If we were to agree with your approach, Wispisoft no longer existed. We would have to remand it to the board to apply master slag. We would have to create law that the board hasn't created and say, even though you haven't thrown out Wispisoft, we have apply master slag. Look at the record and tell us whether there's a causal relationship. You're arguing there isn't. The board hasn't said that. But the board, since the board chose not to. No, no, that's not the way. Well, that's that you're saying. If you're saying the board, come on, answer my colleague, please. If the board if your argument is the board applied the wrong law. What the circuit court does is to reverse a remand for application of the correct law. And that would be to apply master slag and to determine whether the board, not whether you or things on this record, there was a causal connection between the withdrawal of recognition. That is an option available to you. The courts have taken different approaches. Don't know that there is a specific standard that applies. I think the question is whether it's in the best interest of all the parties four years after the fact to go through another four years to get this resolved. Underestimate that it's certainly going to cause delay. We would say needless delay. If the board had this opportunity to enforce the order on proper terms and chose not to, then, you know, we think it would be best for everyone to follow today. But you certainly have discretion to choose to remand. There's things in the dissent that invite a remand. If I add law principles correctly, we have an obligation to send it back to the agency to apply the law that it should have applied in the first instance. That's the law that the circuit applies all the time. We don't take it upon ourselves to say we think the employer would have won under master slag. If we think master slag, we would send the case back. Well, what we have, if the board has gotten it wrong, is they have given no good reason to not honor the withdrawal. And so that is a way in which you could also rule. But frankly, either approach is better than the situation as it stands now. Right now, it's a complete injustice to the employees and is depriving them of their rights. Not sure what time I have left, but I'll save what's left of it. I give you A on persistence. Thank you. Thank you. We'll give you time for rebuttal. Morning. Morning. Mr. Sauter. Sauter? Yes. Pillard. Pillard. French names. I know. Thank you. Morning, owners. Greg Sauter. Sauter. It goes both ways. For the National Labor Relations Board. I'm Sauter in private. Public Sauter. Thank you for, please, the honorable court. Given the way the conversation has been going so far, maybe I'm going to take a little bit of an unorthodox approach. Instead of launching it to some opening statement, ask the judges if you have any doubt regarding the board's findings. That's substantial evidence support supports findings regarding the unlawful delay of bargaining. The failure to provide information requested and the refusal to discuss a mandatory. So, I mean, the principle disagreement here is over which theory the board was resting. One requires the board, the board in its prosecution. If you're under mass, it's like to show a causal relationship. If you're using the certification here, cases, whispersaw, all the board has to show is UOP occurred during the certification year. You're you're applying this ladder theory. Now, the thing the question you obviously you understand the weirdness in this case, you prepared it. And it's the weirdness that the dissent points out. You're in a situation where. Whispersaw is if you're in situations where whispersaw is clearly applicable. And the board chooses, as they have in a few circumstances to go with the master slag causal relationship test. How am I as an informed to read it to figure out why they do that here? I don't I don't see how they overruled anything because in none of those cases that they talk about whispersaw. So the board certainly has never grappled with. Are we on one theory or are they mutually exclusive? They never said it. But how am I supposed to think about it? That's kind of weird. And that's some of what the dissent is talking about. If you've got whispersaw to use, that's an easy win. Why would you take on the burden of mass? Well, your honor, why did they take on? Right. I think it goes back to the point that you made, which is prosecutorial discretion, not the boards, but the general counsel. The general counsel comes to the board with a certain theory of the case and the board applies that theory to the facts. And there are plenty of cases such as David Sachs or. The other one will come back to me where the board said, you know, they overruled the administrative law judge finding there was no violation, but then they refused the union or the employers and treaties to apply another legal theory to the same facts, saying that it had not been brought to them from the beginning. In this case, just as in Whispersoft, the general counsel came to the board from the very beginning in the complaint, actually asking for the board to impose a remedy consistent with Marjack and extend the certification year for the amount of period applicable. And. No, go ahead. OK, so I recognize the ALJ choose. The ALJ was applied, which in the ALJ apply that's like. And then you're in this case in this case. Yeah. Yes. But the G.C. put forth both. The G.C. went the G.C. actually both. Yeah, they were both. In fact, we're only going to consider the easy one. Right. Exactly. In fact, in the general counsel's hearing brief, the general counsel said, if you find that the. The certification here should be extended. In that case, the withdrawal recognition occurred during the extension and the withdrawal recognition is unlawful, regardless of whether the master slack factors are met. So the G.C. was pursuing both theories. So if the board had so chosen, it could have affirmed the ALJ's master slack approach, but basically done both said that because part because we're going to extend the bargaining year, that's not only from our, you know, from enforcement of our order forward, but it also means that the decertification is invalid. So that that same result could occur under with a master slack analysis. I'm not I'm not sure. There's sort of went under the new Madrid, but at Whispersoft, Marjack, Lamar, you know, analysis, Frank's analysis. If there is an intervening decertification petition or actual decertification action before the board orders enforced, but the board determines that the certification year was effectively truncated by the employer's action. One, I mean, going back to Frank's, one of the remedial options is to reject the intervening decertification. Right. The petition. Well, petition or actual withdrawal, withdrawal. OK. And so I guess I'm wondering why the two things, the remedy that is offered under Whispersoft. And new Madrid and the like, that would also be available pursuant to a master slack merits analysis, right? It would, Your Honor, in the sense that. I don't know if the board would would call it an extension of certification year or a simple bargaining order. But there's the bargaining order in this. I mean, you wouldn't have if it weren't an extension of the bargaining year. I mean, that's why I think Mr. Baskin is so focused on the extension of the certification year bar, because if it's just an affirmative bargaining order, well, there's no union to bargain with unless you invalidate the. Well, unless you invalidate the withdrawal recognition. Yes. And under master slack, you can't withdraw recognition on a based on a tainted petition. Right. So if a petition is tainted by the employer's action, the withdrawal is unlawful. The union is still there. So that's out of the way. And then you can have an affirmative bargaining. Right. Exactly. Exactly. And it puts in focus what Mr. Baskin's concern is, is that there's a level of taint that needs to be shown under master slack. Now, as I read the cases, it may be that not every master slack case is a case in which, for example, an affirmative bargaining order is appropriate. It depends on whether the underlying unfair labor practices also interfered with a portion of the. The bargaining year. Is that is that your understanding? Not master slack is not tied to the certification year. Your master. No, I know. So I know. But but Whispersoft is. And what I'm saying is, are there because master slack is not tied to the certification year? Are there cases in which an affirmative bargaining order? I mean, I think the answer is yes. There are cases. I think my my colleague has written one such opinion recently. There are cases in which there could be a taint under master slack. De-certification could be invalidated, but there's no affirmative bargaining order. Because the certification year bar was honored, even though the election was tainted. So. Let me go back just just just a little step. Which are you proceeding under? What? Whispersoft or master slack? Because master slack, you've got to show a causal. Right. I'm going to ask you to show a causal. That's why the election results are thrown out. It's because of taint. Not the election. Not the election. De-certification. De-certification. De-certification. And when you say not, isn't a de-certification pursuant? No, it's a petition. It's a petition. The union. The employees come to the employers, say we have majority of us have signed this petition. We want to get rid of the of the union. And therefore, we want the board to hold election to show that we no longer want a union here. So it's a it's a preliminary step prior to the. So in this case, there was a petition. Yes. But the union remains in place. Well, because the union, what will happen is there will be. So there was no decertification petition and there was no board action on it. There was a there was a decertification petition. I'm sorry. No, no, no, no, no, no, no, no, no, no, no. Not at all. Believe me, my head hurts. The there was a decertification petition. The way the the proper way to handle that would be for the employer to say. The employees say they don't want the union anymore. We're throwing up our hands, we're going to ask for the board to decide this. They petitioned the board, they petitioned the board or the employees petitioned the board. The board has to come in and figure out what the status is here. Do the employees still want the union or not? And that has not happened in this case. No, because the employer jumped the gun and withdrew recognition. And now you're in withdrew recognition, but that's. And so is the status quo that there is no recognition? It's just something they can do unilaterally. So it's something they can do unilaterally at their own peril. If they and if they're in the situation they are here and the board finds that the unlawfully withdrew recognition. Well, they have to face the consequences if it's within the certification year. And the consequences are most severe, which is what the other side's fighting. I don't want that presumption that you can't do that in the certification year. And you have caused the union to lose what the law says they're entitled to is one year of good faith bargaining. You took that away. Exactly. And not just any year of good faith bargaining. The first year that there is no. This is a unique moment in the collective bargaining relationship. I appreciate that. This will never happen again. I appreciate that. I've read the Supreme Court cases. I've read all the other board precedent on this. So it's your position that because there was a complaint pending that had asked for extension of the certification year, that that should put J.G. Kern on notice when it withdraws recognition that actually the wiser thing to do at that point would be petition for an election because that would. Cover them better if the petition to extend the certification, if the complaint seeking extension of the certification year succeeded. How is the employer? The employer thinks. You know, these unfair labor practice claims are going to come in our favor. We bargained in good faith. We didn't do the things that the GC charges us with having done. We see that there's a petition to decertify. Our options here are withdraw recognition unilaterally or petition the board. Is there any greater protection? Is there any third option? And is there any greater protection for the employer in that uncertain moment? Well, the greater protection is to is to petition the board for for an election to resolve the issue. And why? And would that resolve the issue? If the board if if there is if there is a question is raised by the employees petition that they do no longer want the union to represent them, then a board supervised election will resolve the issue. And is one arm of the board going to know what the other arm is doing? Like, would it would the unfair labor practices necessarily be resolved before the decision about whether to hold an election? I think. I don't want to step out of my, you know, of this case too much. But I think that obviously assuming that the there would first have to be an analysis as to whether the petition is legitimate, whether or if it's tainted by the employer's unfair labor practices. If it is, then the petition itself is unlawful and you don't have an election. However, if it turns out employees have source of their own accord without undue influence, decided that they they want to get rid of the union, then the election goes forward. That's so so in the process of deciding the petition for an election, the board would decide whether the. De-certification of employees petition was tainted, but they wouldn't decide whether it occurred, whether an extension of the bargaining year was warranted. You were just talking about this, about this very specific situation of, you know, of whether the petition is is lawful or not, or, you know, when the election would follow. If if the if the decertification petition is tainted, then the then the board remedy, then the remedy and the board remedies that by saying you have to bargain union. Right. But if if there's no if there's a petition and there is not the kind of unfair labor practices that would influence, it would necessarily meet the mandate. My, my question is how conceptually does the board think about the whisper soft type issue in the context of deciding whether to grant a petition for a decertification election? I mean, isn't that I, I want to add to the question. Sure, go ahead. The theory of whisper soft and the certification year is you have to allow the union unimpeded to have good faith bargaining for one year. That's what the fight is. If anything goes to the board, one side is going to be saying the employees have lost interest. The other side is going to be saying we didn't get a full year because three, four months ago before this was being filed, they wouldn't give us information. They wouldn't agree to any meetings. They wouldn't talk to us. They spit at our representative. We never had an opportunity for four or five months to bargain. So, all the stuff about the petition really is looking at that. Did they get for a year an opportunity to bargain? And if the board finds it either could be a ULP filed against the union. If I remember this correctly, you'll be held against the employer saying they won't talk to us anymore. They've withdrawn recognition because they think the employees are gone or the reverse. The union or the employees come in and file a petition for de-cert. The question is the same. Did the union during the certification year get the benefit of a full year? And if not, the board has traditionally extended the year and told the union, even though it may go on forever. Years later, months later, they say now give them the four months you didn't give them. Am I right or wrong? Yeah, no, that's absolutely correct. And yes, the answer for you is unequivocally yes. For Judge Pillard, I guess what I'm getting back to your issue is if you have a de-certification petition that occurs in the context like this one, where there was a delay of bargaining, where the union alleges that it did not get its full 12 months of bargaining, then the board will resolve that. Because if that is the case, you don't even have to look at, you know, whether whether the petition was tainted or not. It just happened during the extension of certification. Now, as you I was going to ask if maybe you were a board member in a prior life, because you quite astutely pointed out that sometimes the board will go with one theory of liability over another because that's how they can all agree to find a violation. In that regard, though, are we needing to put into the opinion whether we're driven by Whispersoft or Master Slack? Well, the board relied solely on Whispersoft to decide this case, so I think I think, yes, if you enforce the board's order, you would be you would be. Let's be clear in this. The board has not made Master Slack findings. No. Counsel, your opposition is correct. There are no causal findings here. No. And I agree with your point earlier that if you were to reverse the board, the proper proper avenue would be demand for a Master Slack analysis. Determine whether or not the ULPs affected the loss of employees. Exactly. That's the Master Slack. Exactly. I think my colleagues probably know this and they would tell me, but I'm going to ask you, what is the difference between a Mardak remedy and an affirmative bargaining order? Is there any Marjack remedy is an extension of the certification year as opposed to a bar, an affirmative bargaining order that can happen? You know, as we as I was saying earlier, there's only one certification here. An affirmative bargaining order can be given at any time later in the relationship. Marjack remedy is specifically the certification. And yet the Marjack situation, there was no. De-recognition of the union, and so it didn't have the part that I take it Mr. Baskin is most concerned about, which is which is. Invalidating a or reviving the union as the representative. So that wasn't an issue in Marjack. In Marjack. The issue was that the employer had petitioned, had petitioned to decertify the union because it believed the employees no longer. So that's the answer to my prior question. OK, this is coming together. Oh, I am. OK, thank you. Thank you. And I wish I could have shorts. So but an affirmative bargaining or in this context is not really different functionally from Marjack because the reason that they're being given more bargaining is because they're extending. So it's not functionally different, but it is it is different in the sense of Marjack. It has a certification year bar from a bargaining or not necessarily. Exactly. All right. Well, once the once there's a decertification bar, you have to bargain. I mean, the certification year, the rule in the certification year is the union has majority status. And the employer has to during that year to recognize and bargain with. Those are the two things. So functionally, whether you're in the certification year or not, you have a duty to bargain. So that's why I'm trying to understand what an affirmative bargaining order is, if it's not the duty that's there anyway, which is you have to bargain with the union when your employees are represented. So certification year is over. Yes. Nothing happened. Then and the union is still around. And then the employer, a few months, whatever, after the certification year says, I have a whole bunch of petitions from the employees saying they don't want this union anymore. The union says after the certification year is over, you did all kinds of bad things. We were still there. Presumptively, the bargaining agent, you refused to talk to us. You fired some people who were union leaders, all kinds of things. So the fight is going to be, is there any causal connection between the U.S. and the alleged loss of employee support? Right. Yes. And if the employer loses a bargaining order, right. Yes, exactly. And so it's a way of holding off a looming petition for decertification election. It's it's so it's a way or it's yes. Basically, it's a way of saying, you know, from now on for a specific amount of time, the union is once again presumed to have majority status and you have to bargain with it. Now, there are reasons I'm sure there are reasons the board refers to the two of them separately. Besides the fact that one occurs right after the certification year, there are probably some some nuances. But for the purpose of this, our discussion here, it's it's more or less the same thing. The remedy is the same. You have to recognize and bargain with the union for a certain amount. And then I have I know we're keeping neither of you are expected to be here this long, but where to go. Is there any if we held that the board could only impose certification your extension before an employer's withdrawal of recognition? In other words, only we would limit the whisper soft tape remedy to a very tough situation, a very tough situation. Exactly. Is there any how feasible is it that the board could provide remedies to unfair labor practices within the certification year? Well, and do an extension that's that's not retrospective in the way that Mr. Baskin is telling us is really painful. But to be quite honest, your honor, it wouldn't happen. The board is. Willfully understaffed, if I may say so, I mean, there's just no way to keep up with, especially right now with these and much as the board would love to decide these cases as they come, it takes time. And that is very tough. That was. No, no, no, no, no. In Veritas, what happened was that the the employer withdrew recognition, the board found you violated the certification year. We're imposing a prospective extension and then the employer again tried to withdraw recognition during the extension. So that's what happened. And that you can see how long that can take. And I wanted to get back to something that you had sort of been alluded to earlier. And the reason we're here right now is because, as you pointed out, it is very difficult for the board to resolve these issues in a you know, in real time. And what the company is trying to do here essentially is to take advantage of the lays inherent in the administrative process to make an end run around the certification year and to avoid its duty to bargain. It's basically trying to take advantage of the fact that it can't be everywhere at once. But what about the notice concerns? I mean, if you're an employer, if you're a union, if you're employees that don't want union representation and you come to the punitive end of the decertification year and you want to know how to act and not dig yourself into a deeper hole. And the general counsel has sought an extension of the decertification year. It hasn't been acted on. But if you would give your best answer to Mr. Baskin's notice concerns, that would be helpful. Don't do bad things during the certification year. I mean, that's that's already water under the bridge. That's what the board's looking back at. Well, to get the extension, that's that is yes. That is basically the answer on bad things during the certification year. And this all comes up afterwards. You're going to pay. And it's no winning argument for you to say under this approach. Oh, wait, we're already past the certification. Yeah, too bad. You did bad things there. And there's a presumption that it had an effect. And here's the remedy. We extend the certification year. That's the rule. Now, if I may, it is. Yes, it is. The way Judge Edwards says it, it sounds harsh. But you have to remember, this is this is when you're talking about Judge Edwards says ever sounds harsh. The gentlest person on this board. Absolutely. Actually, today, when you're talking notice, you're talking about notice. You're not talking about the process. Notice is an element of due process. Last time I checked key element of it. Yes, but it is an element. Once complaint issues, it is element of the of the. It is not practical. There's no work out with the doctor. Okay. But there's no I don't. Unless maybe you could correct me. I don't think there is a due process requirement for an employer to know what legal theory the board is going to use against it at the time that it commits the unfairly. I'm asking a more practical question about. No, I understand. I do be noted. So so in terms of whether you adopt or would would tweak the explanation that that my colleague gave that, you know, the note of the conundrum that Mr. Baskin's client finds itself in is no conundrum at all because it's a it's a, you know, pit of its own making or any other answer about the safe thing to do is to petition. The safe thing to do in this case would be now. The safe thing to do in this case would be to ask for the board to step in. You have this petition going on. Now, the board is obviously going to and not withdraw because you're asking for. Yes. And not withdraw, not withdraw recognition. And let's let all the charges and complaints and all of all that stuff be resolved by the board and that the chips fall where they may. Now. The employer may find itself back in the situation where it is today, meaning with an extension of the certification year, because for one reason or another, you know. The petition was unlawful or whatever, but it will not have unlawfully withdrawn recognition. Again, I'm at risk of displaying my ignorance to employers ever ask for decertification elections. It happens. Happened in Marjack. That was a long time ago. But no, it does happen. It does happen. Yes. Sure. I think it depends on the advice that they receive and on how how certain they are of their. Of their standing with with employees. Thank you. With that, thank you very much. And we ask that the. Your time. Mr. Baskin, we kept you up here and use all your rebuttal time, but we will give you two minutes for rebuttal. Well, I'll be brief because what's at stake here is the mode of analysis. Are you going to leave the regulated rudderless with a board that is not a prosecutor, by the way? It's not prosecutor discretion. The board is supposed to adjudicate cases that come before it. And you have in many, many cases said to the board, you've got to have your precedents match up. You can't just go on a tangent at a whim because it's Thursday or for some other irrational reason. And there is no rationality to this. You know, they have created a per se rule. I go back to what Judge Edwards, you described on the what an employer could do is not do bad things. But you were describing the master slack test, which is how bad are they? Or in response to what your question was, what could they do to protect themselves? Well, if you've delayed, you could make sure to cure that delay by meeting, engaging in two meetings a month over the rest of the 10 month period, finding thirty five different agreements, making extensive progress towards resolution of the bargaining. And that should do it under master slack. It would. But when they pull out of nowhere, this per se rule, it says, once you miss that deadline of you didn't hold the first meeting for January 10th, why it wasn't January 9th or December 17th when the company representative said he was available. Putting that aside, once that happens, it's over. And you didn't even know it because we at the board can pick and choose the rationales. And we feel like that's wrong. You said it's wrong. And we ask that you say it again. Thank you. Thank you. Case is submitted.
judges: Pillard, Childs, Edwards